IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| ROBERT PLEMMONS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:10-CV-04177 |
| ) | |
| REGIONAL ELITE AIRLINE SERVICES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**O R D E R**

Pending before the Court is Defendant Regional Elite Airline Services's ("Regional Elite's") motion for summary judgment. [Doc. # 41] on Plaintiff Robert Plemmons's claims of wrongful termination under the Railway Labor Act and the Missouri Constitution. For the reasons stated below, the Court grants summary judgment in favor of Regional Elite on all of Plaintiffs' claims.

**I.  Factual background[1]**

Plemmons began his employment with Regional Elite at its Asheville, North Carolina station. He transferred to its Columbia, Missouri station in December of 2009. Plemmons's supervisor in Columbia was Brenton Daniel, the Station Manager.

Plemmons is a former member of the United States Steelworkers union. Plemmons

---

[1] In considering Regional Elite's motion, the Court has drawn all reasonable inferences in favor of Plemmons, the non-movant.

1

spoke to five coworkers at Columbia Regional Elite about the union. These conversations occurred outside the open door to Daniel's office. Daniel is sometimes able to hear conversations outside his office, although there is background noise from an aircraft radio and television in the area. Plemmons did not participate in any organizing efforts other than these conversations. Neither Regional Elite nor Daniel ever made any communication to Plemmons regarding unions. Daniel never said anything to Plemmons about these union conversations, nor interfered with them, although Daniel once stated to Plemmons over lunch that Plemmons's co-workers felt like Plemmons was "rocking the boat" at the station. [Doc. # 42-1 at 12]. Plemmons does not believe anyone else within Regional Elite's management was aware of Plemmons's support for the union.

The Company Communications Equipment Policy of Regional Elite's Employee Handbook provides that internet access should not be used for inappropriate behavior. [Doc. # 42-1 at 28]. On February 14, 2010, Ms. Bonner discovered a picture of a woman who was either nude or wearing a bathing suit on the computer in the Columbia Regional Elite operations room. This particular computer belonged to Mesaba Airlines. Ms. Bonner reported to Daniel that she had found an image of a nude woman on the computer. Daniel asked employee Larry Newsome to help him search the computer's internet history, because Mr. Newsome was good with computers. The internet history revealed visits to several obviously pornographic websites as well as several inappropriate search terms. This history also revealed that around that same time, someone had accessed the website of an Ashville, North Carolina, radio station. Daniel sent a printout of this internet history, along with a

2

statement he solicited from Ms. Bonner, to his supervisor, J.W. Jones.

Daniel consulted the employee work schedule, which indicated that only Plemmons and co-worker Ed Hamadto were working at the time the pornographic websites were accessed. Because Plemmons had recently transferred from Ashville, Daniel spoke to Plemmons first about the incident. Plemmons admits that this was a reasonable decision given his connection to Asheville. [Doc. # 42-1 at 30].

Daniel confronted Plemmons about the incident, and showed Plemmons the evidence from Daniel's investigation. Plemmons denied responsibility for the incident. Daniel told Plemmons that "[Plemmons] was not allowed to leave until [Daniel] had something in his hand for HR." [Doc. 3 42-1 at 16]. Plemmons wrote a statement that read, in relevant part, "I am truthfully sorry for my actions here at COU in regards to the sites that were noticed. I give you my word that this will never happen again..." [Doc. # 42-3 at 36]. Although Plemmons only intended to admit to accessing social networking, personal email, and video-game sites, Daniel interpreted this as an admission that Plemmons had accessed pornographic websites. Daniel also met with and obtained a statement from Hamadto. This statement accounted for Hamadto's whereabouts during the times when Daniel believed pornographic websites were accessed. Hamadto denied any use of the computer during that time.[2] Daniel sent Plemmons home pending the outcome of the investigation.

---

[2] Plemmons objects to this statement on hearsay grounds. For purposes of this Order, the Court considers the statement only for its effect on Daniel, and not for the truth of the matter asserted. The statement does not meet the definition of hearsay for these purposes.

Daniel submitted all information gained from the investigation to his supervisor, Jones, who forwarded it to Regional Elite's People Department. Daniel also verbally recounted the steps of the investigation to Jones. As per Regional Elite policy, the decision to terminate Plemmons was made jointly by the Regional Manager, People Generalist, and People Manager. On February 19, 2010, People Generalist Anne Hanson emailed Daniel instructing him to terminate Plemmons's employment. Plemmons admits that termination of employment is an appropriate measure for an employee who accesses inappropriate pictures of nude women at work. [Doc. # 42-1 at 32]. Three other employees at Regional Elite have been accused of similar misconduct, and all three were discharged from employment. [Doc. # 48 at 25].

Pursuant to Regional Elite policy, Plemmons was allowed an appeal of the termination decision. Plemmons submitted his appeal, denying responsibility for the incident. Former Director of Field Operations Brian Cobb reviewed the appeal and upheld the termination.

## II. Discussion

### A. Railway Labor Act

In order to state a prima facie case for wrongful discharge under the Railway Labor Act, Plemmons must show by a preponderance of the evidence that (1) he engaged in union activities; (2) his employer knew of his protected activity; (3) his employer harbored animus toward the activity; and (4) the animus was a causal factor in the termination. *See Lebow v. American Trans. Air, Inc.*, 86 F.3d 661, 666 (7th Cir. 1996). If Plemmons succeeds in meeting his burden, then the burden shifts to Regional Elite to prove beyond a preponderance

4

of the evidence that Plemmons would have still been fired for a valid reason. *Id.* The Court assumes for purposes of this Order that Plemmons has met his prima facie case and considers Regional Elite's argument that it would have validly and independently terminated Plemmons for viewing pornography at work.

Assuming Plemmons has stated a prima facie case for wrongful discharge, Regional Elite has met its burden to show a non-discriminatory reason for terminating Plemmons. After a Regional Elite employee discovered inappropriate materials on a workplace computer, Regional Elite: (1) narrowed its list of potential users by determining who was on duty when the forbidden web pages were accessed; (2) connected the specific Asheville, NC, website visit to Plemmons; (3) reviewed the alibi of Mr. Hamadto, the other employee on duty when the forbidden pages were accessed; and (4) was told by Plemmons that Plemmons was sorry for his actions related to the website he had been shown by Daniel. Plemmons himself has admitted that many of the steps of the investigation were reasonable, and that termination is the proper action for those viewing pornography at work.

Given this evidence, no reasonable juror could conclude that Plemmons was terminated because Daniel overheard Plemmons talking about the value of unions. This is especially true because Daniel, the only manager who might have been aware of Plemmons's union conversations, did not participate in the decision to terminate Plemmons, and because Regional Elite also terminated the three other Regional Elite employees on record accused of violating this policy.

Plemmons argues that the investigation of his alleged viewing and downloading

5

pornography at work was so poorly conducted as to suggest that it was pretextual, and that union animus was the true underlying cause. Specifically, Plemmons disputes whether Regional Elite employed the correct methods to trace internet activity, and disputes whether this method yielded the correct times that the pornographic websites were, in fact, accessed. But "[t]he critical inquiry in discrimination cases like this one is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge." *See McCullough v. Univ. of Arkansas for Med. Sci.*, 559 F.3d 855, 861-62 (8th Cir. 2009) (Title VII case). Thus, whether Plemmons violated Regional Elite's internet policy is not the dispositive issue. The relevant inquiry is whether Regional Elite, in good faith, believed that he had. Given the evidence, no reasonable juror could conclude that Regional Elite did not have a good faith belief that Plemmons did access pornography.

Plemmons also argues that the Court should infer union animus from the temporal proximity between Plemmons's protected activity and his termination. But a subsequent admission by an employee that he violated a workplace policy is an "intervening event" that "undermines any causal inference that a reasonable person might otherwise have drawn from temporal proximity." *Freeman v. Ace Telephone Ass'n.*, 467 F.3d 695, 698 (8th Cir. 2006) (refusing to infer causation from temporal proximity where, between his protected activity and his termination, a co-CEO admitted to continuing and lying about a forbidden sexual relationship with a subordinate employee).

    **B.**    **Wrongful discharge under the Missouri Constitution**

Plemmons also argues that he was terminated for exercising his constitutional right to bargain collectively, in violation of article I, section 29 of the Missouri Constitution. *See Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 91 n.8 (Mo. 2010). Plemmons argues that the same evidence he presented for his Railway Labor Act case supports a prima facie case under the Missouri Constitution as well. This argument also fails because Regional Elite has demonstrated a non-discriminatory purpose for terminating Plemmons's employment .

## III. Conclusion

Accordingly, it is hereby ORDERED that the motion for summary judgment filed by Defendant Regional Elite is GRANTED [Doc. # 41] on all counts.

        s/ Nanette K. Laughrey  
        NANETTE K. LAUGHREY  
        United States District Judge

Dated: September 7, 2011  
Jefferson City, Missouri